IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HARVEY E. JACKSON,
        Plaintiff,

v.                                         Civil Case No. 3:16-cv-00337-JAG

MIDDLE PENINSULA NORTHERN NECK
COMMUNITY SERVICES BOARD,
CHARLES R. WALSH, JR., and
WILLIAM F. WALLACE,
        Defendants.

## OPINION

Middle Peninsula Northern Neck Community Services Board (the "CSB") fired Harvey Jackson for having a sexual relationship with a CSB client. Jackson did not know that his sexual partner was a client of the CSB. Jackson sued, alleging violations of various due process rights and defamation. The defendants have moved to dismiss all but one of the claims. Because the CSB's actions neither shock the conscience nor tend to incite violence, the Court GRANTS the defendants' motion to dismiss Counts II and IV. Because the termination-related letters sent by the CSB may contain false information, however, the Court DENIES the defendants' motion to dismiss Counts III and V.

## I. BACKGROUND

The CSB serves the needs of individuals within its region who have issues associated with mental health, substance abuse, intellectual disabilities, and developmental disabilities. The CSB hired Jackson in 2011 as a Residential Facility Technician. In 2013, Jackson met Olivia Russell through a friend from church. Unbeknown to Jackson, Russell was a client of the CSB. In early 2015, Jackson and Russell began a consensual sexual relationship.

On June 4, 2015, the CSB Director of Human Resources, William Wallace, met with Jackson and asked him about his relationship with Russell. Jackson admitted to having a sexual relationship with Russell and to giving her money when she ran short. During this meeting, Wallace instructed Jackson to stay away from Russell. Wallace never informed Jackson that Russell was a client of the CSB. Later that day, Wallace called Jackson and fired him.

That same afternoon, the CSB Executive Director, Charles Walsh, Jr., sent a letter to Jackson confirming his termination. Walsh copied three other CSB employees on the letter, the Residential Services Coordinator, the District Manager, and the Residential House Manager. The letter stated in part:

> I am taking this action based on the interview you had with Mr. Wallace today wherein you admitted to having had a consensual sexual and otherwise inappropriate relationship with a CSB client. These actions are in direct violation of the [CSB] Policy Manual, paragraph 5.4D5 that prohibits relationships with clients of the nature you had admitted to have had. Your relationship with this client and the manner in which it was conducted is sufficiently egregious that I am left with no alternative but to remove you from CSB employment.

(Am. Compl. ¶ 39, Ex. C) (the "Termination Letter"). CSB Policy Manual ¶ 5.4(D)(5) prohibits any employee from having "any inappropriate involvements and/or relationships" with clients. (*Id.* at ¶ 40, Ex. D.) The policy defines this term to include "dual relationship, fraternization, [and] sexual contact." (*Id.*)

In the days that followed, the CSB conducted an investigation into Jackson's relationship with Russell, interviewing Russell in the process. During this interview, Russell stated that she never told Jackson that she was a CSB client. At the end of the investigation, Walsh concluded that while Jackson had not exploited or abused Russell, his conduct violated CSB policy. On

June 11, 2015, Walsh sent a letter to Russell (the "Russell Letter") informing her of the results of the investigation and that the CSB had taken "appropriate action." (Am. Compl. ¶ 46, Ex. E.)

After his termination from the CSB, Jackson applied for a job at Pamunkey Regional Jail. As part of the application process, the jail required Jackson to sign an "Authorization to Obtain Information" form to send to former employers. Jackson alleges that the CSB has a practice of releasing personnel files—including information regarding the reasons for termination—to all inquiring employers. Pamunkey Regional Jail did not hire Jackson, nor did a number of other potential employers.

## II. DISCUSSION[1]

Jackson alleges five counts in his complaint: (I) violation of procedural due process under the Fourteenth Amendment, 42 U.S.C. § 1983; (II) violation of substantive due process under the Fourteenth Amendment, specifically his right to privacy, 42 U.S.C. § 1983; (III) common law defamation; (IV) violation of Virginia's insulting words statute, Va. Code § 8.01-45; and (V) violation of substantive due process under the Fourteenth Amendment, specifically his liberty interest in his reputation, 42 U.S.C. § 1983. The defendants have moved to dismiss Counts II through V.

---

[1] A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "The tenet that a court must accept as true all of the allegations contained in a complaint[, however,] is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### *Count II: Violation of the Right to Privacy*

In Count II, Jackson alleges that the CSB and Walsh infringed on "the right to privacy of employees of the CSB to engage in private, consensual, sexual relationships with individuals that they are unaware are clients and/or consumers of the CSB," violating the right to liberty protected by the Due Process Clause. (Am. Compl. ¶ 88.) The parties argue about whether a constitutional right to privacy exists. The Court need not decide this question, however, because even if such a right does exist, the CSB's actions do not meet the standard for deprivation of the right.

As a general matter, the "core concept" of substantive due process entails protection of fundamental rights and liberties against arbitrary governmental action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). In determining what constitutes arbitrary governmental action, a court must first determine if the claim challenges executive action or legislative action. *Id.* at 846. In a challenge to executive action like in this case, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. Conduct shocks the conscience when it is "intended to injure in some way unjustifiable by any government interest . . . ." *Id.* at 849 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). If the government action does not shock the conscience, then the due process claim fails. *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999). Only if the conduct passes this threshold test does the court look at the nature of the asserted interest. *Id.*

In this case, the CSB serves vulnerable members of society. The fact that it fired an employee who had a sexual relationship with one of these vulnerable members does not shock anyone's conscience. The fact that the CSB did not wait to determine whether Jackson knew

4

that Russell was a client of the CSB, while possibly unfair or hasty, still does not rise to the level of shocking the conscience. Accordingly, Jackson has failed to state a claim under Count II.

### *Count III: Defamation*

In Count III, Jackson alleges that the defendants defamed him in the Termination Letter and the Russell Letter. To state a claim for defamation, Jackson must allege: (1) publication of (2) an actionable statement with (3) the requisite intent. *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005). To qualify as actionable, the statement must be both false and defamatory. *Id.* Opinions generally do not meet the falsity requirement because a plaintiff cannot prove an opinion either true or false. An opinion may be actionable, however, "if the opinion can be reasonably interpreted to declare or imply untrue facts." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).[2] In determining whether a statement contains implied actionable facts, courts should consider "whether a reasonable listener would take the speaker to be basing his or her opinion on knowledge of facts of the sort than can be evaluated in a defamation suit." *Reynolds v. Pionear, LLC*, No. 3:15CV209, 2016 WL 1248866, at *4 (E.D. Va. Mar. 25, 2016) (alterations accepted and internal quotation marks omitted) (quoting *Baylor*, 2011 WL 1327396 at *11).

In this case, the alleged actionable statements rest on the borderline between fact and opinion. Even if the statements are opinions, however, the Court finds that they plausibly imply underlying facts. Taken in the context of the entire letter, the statements plausibly imply that Jackson's relationship with Russell was egregious or inappropriate for more sinister reasons than

---

[2] *See also Reynolds v. Pionear, LLC*, No. 3:15CV209, 2016 WL 1248866, at *4 (E.D. Va. Mar. 25, 2016) ("[D]efendants can be held liable for defamation when a negative characterization is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener]." (internal quotations and citation omitted)); *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47, 670 S.E.2d 746, 751 (2009) ("[D]efamatory statements may be made by implication, inference, or insinuation.").

the true reason for Jackson termination. For example, a reasonable observer could plausibly conclude from the statements in the Termination Letter that Jackson knew Russell was a client—and perhaps was involved in her treatment—and exploited her vulnerabilities in the course of their relationship. These implied facts could be proven true or false, making the statements actionable for defamation. Accordingly, Jackson has plausibly stated a claim for defamation.[3]

The CSB also asserts qualified privilege as to the Termination Letter because the CSB only published it to other relevant CSB employees. While Virginia law does recognize a qualified privilege for defamatory statements made between employees regarding disciplinary and termination matters,[4] a plaintiff can overcome this privilege in a number of ways, including by showing actual malice or publication to a person with no interest in the subject matter. *Echtenkamp v. Loudon Cty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1061–62 (E.D. Va. 2003). On this defense, this case needs more factual development, so the Court will not make a determination at this time.

### *Count IV: Insulting Words*

In Count IV, Jackson alleges that the CSB and Walsh violated a Virginia statute that prohibits insulting words by sending the Termination Letter. Section 8.01-45 of the Virginia Code reads in full: "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45. While similar to defamation, a cause of action for insulting words requires

---

[3] While the Court finds that Jackson's claim meets the lenient plausibility standard of a motion to dismiss, the Court has great doubts about his ability to discover facts sufficient to bolster his claim enough to overcome the higher bar at summary judgment.

[4] *See Larimore v. Blaylock*, 259 Va. 568, 572, 528 S.E.2d 119, 121 (2000); *see also Echtenkamp v. Loudon Cty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) ("[T]he privilege applies broadly to all statements related to 'employment matters,' provided the parties to the communication have a duty or interest in the subject matter.").

that the statements tend to incite violence.[5] *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 441, 477 S.E.2d 741, 742–43 (1996).

In this case, Jackson points to the Termination Letter as the insulting words that "greatly upset Plaintiff." (Am. Compl. ¶ 124.) These facts do not plausibly allege any tendency to incite violence. In a similar case, *Allen & Rocks, Inc. v. Dowell*, the Supreme Court of Virginia held that words used in a telephone conversation about an employee termination did not tend to violence or breach of the peace. 252 Va. at 443, 477 S.E.2d at 743. While the Termination Letter may have upset Jackson, nothing indicates that the words used would prompt a violent reaction, from Jackson or any other reasonable person. Consequently, Jackson has failed to state a claim for insulting words.

### *Count V: Violation of the Liberty Interest in Reputation*

Finally, in Count V, Jackson alleges that the defendants violated his liberty interest in his reputation. The Due Process Clause of the Fourteenth Amendment protects a person's "liberty to engage in any of the common occupations of life" and ensures "the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (citations omitted). The government deprives an individual of this liberty interest without due process when statements made by the employer "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and

---

[5] *See Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 668 (E.D. Va. 2015) ("[I]nsult alone is not sufficient under the insulting word statute: a plaintiff must also plead sufficient facts such that a reasonable juror could find that the words have a 'clear and present tendency to incite violence.'"); *Thompson v. Town of Front Royal*, No. CIV. A. 5:98CV00083, 2000 WL 329237, at *4 (W.D. Va. Mar. 16, 2000) (stating that the insulting words statute "only penalize[s] words used in a verbal attack directed at a particular individual in a face to face confrontation that presents a clear and present danger of a violent physical reaction" (citing *Hutchins v. Cecil*, 44 Va. Cir. 380, 1998 WL 972093, at *4 (1998))).

(4) were false." *Id.* (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988)). To meet the publication requirement, the plaintiff need only show that inspection of his personnel file by a prospective employer is *likely*; proof of actual dissemination is not required. *Id.* at 650. A plaintiff can show likelihood of dissemination in two ways. First, the plaintiff can prove that his former employer "has a practice of releasing personnel files to all inquiring employers." *Id.* Alternatively, the plaintiff can prove that "although his former employer releases personnel files only to certain inquiring employers, that he intends to apply to at least one of these employers." *Id.*

In this case, for the same reasons Jackson plausibly alleged a false statement in Count III, he has plausibly alleged the falsity requirement here. As to the publication requirement, Jackson has alleged that the CSB likely released his personnel file to Pamunkey Regional Jail. Accordingly, Count V survives the defendants' motion to dismiss.[6]

### III. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART the defendants' motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: January 18, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[6] The Court declines to dismiss Count V based on qualified immunity at this time.

8